**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SANDRA M. FORD, | No.  2:18-CV-3153-DMC |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, see ECF Nos. 7 and 8, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment, see 28 U.S.C. § 636(c).  Pending before the Court are the parties' briefs on the merits.  See ECF Nos. 18 and 21.

The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is "such evidence as a reasonable mind might accept as adequate to support a

1    conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including

2    both the evidence that supports and detracts from the Commissioner's conclusion, must be

3    considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v.

4    Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's

5    decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

6    Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

7    findings, or if there is conflicting evidence supporting a particular finding, the finding of the

8    Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

9    Therefore, where the evidence is susceptible to more than one rational interpretation, one of

10   which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

11   Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

12   standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

13   Cir. 1988).

14           For the reasons discussed below, the Commissioner's final decision is affirmed.

15

16                      **I.  THE DISABILITY EVALUATION PROCESS**

17           To achieve uniformity of decisions, the Commissioner employs a five-step

18   sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R.

19   §§ 404.1520 (a)-(f) and 416.920(a)-(f).  The sequential evaluation proceeds as follows:

20           Step 1        Determination whether the claimant is engaged in
21                                      substantial gainful activity; if so, the claimant is presumed
                                        not disabled and the claim is denied;

22           Step 2        If the claimant is not engaged in substantial gainful activity,
                                        determination whether the claimant has a severe
23                                      impairment; if not, the claimant is presumed not disabled
                                        and the claim is denied;

24

25           Step 3        If the claimant has one or more severe impairments,
                                        determination whether any such severe impairment meets
26                                      or medically equals an impairment listed in the regulations;
                                        if the claimant has such an impairment, the claimant is
                                        presumed disabled and the claim is granted;

27

28   / / /

2

| | | |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989).  The claimant has the initial burden of proving the existence of a disability.  See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work.  See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f).  If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy.  See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

3

1

**II.  THE COMMISSIONER'S FINDINGS**

2

Plaintiff applied for social security benefits on March 3, 2015.  See CAR 10.[1]  In

3

the application, plaintiff claims disability began on October 19, 2011.  See id.  Plaintiff later

4

amended her onset date to February 25, 2015.  See id.  Plaintiff's claim was initially denied.

5

Following denial of reconsideration, plaintiff requested an administrative hearing, which was held

6

on July 28, 2017, before Administrative Law Judge (ALJ) Sheila Walters.  In a January 29, 2018

7

decision, the ALJ concluded plaintiff is not disabled based on the following relevant findings:

8

9

10

11

12

1. The claimant has the following severe impairment(s): seronegative rheumatoid arthritis; fibromyalgia; Schnitzler's syndrome; asthma; degenerative joint disease of the right knee status post-surgery; degenerative joint disease of the first carpal-metacarpal joint; osteoarthritis of the hands; degenerative disc disease of the lumbar spine; mild degenerative joint disease of the sacroiliac joints (trochanteric bursitis); scoliosis; and tendonitis of the right shoulder and elbow.

13

14

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

15

16

17

18

19

20

3. The claimant has the following residual functional capacity: to perform light work as defined in 20 CFR 404,1567(b) except she is able to lift and carry ten pounds frequently and twenty pounds occasionally; to sit for at least six hours of an eight-hour workday; to stand and/or walk for at least six hours of an eight-hour workday; she is limited to occasional climbing of ramps and stairs; she is precluded from climbing of ladders, ropes, and scaffolds; she is limited to occasional balancing, stooping, kneeling, crouching, and crawling; she should avoid concentrated exposure to fumes, odors, dusts, smoke, gases, poor ventilation (and so forth); and she is able to perform frequent fine manipulation and frequent overhead-reaching.

21

22

23

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 12-23.

24

25

After the Appeals Council declined review on October 3, 2018, this appeal followed.

26

/ / /

27

---

28

[1]      Citations are the to the Certified Administrative Record (CAR) lodged on June 4, 2019, see ECF No. 11.

4

1

### III. DISCUSSION

2          Plaintiff presents three arguments in her appeal: (1) the ALJ improperly evaluated

3    the medical opinions of plaintiff's treating doctors; (2) the ALJ improperly rejected plaintiff's

4    testimony; and (3) the ALJ's hypothetical question to the vocational failed to consider evidence

5    from plaintiff and her doctors.

6          **A.      Medical Opinions**

7          "The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue,

8    533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)).  The ALJ errs by not

9    explicitly rejecting a medical opinion.  See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir.

10   2014).  The ALJ also errs by failing to set forth sufficient reasons for crediting one medical

11   opinion over another.  See id.

12          Under the regulations, only "licensed physicians and certain qualified specialists"

13   are considered acceptable medical sources.  20 C.F.R. § 404.1513(a); see also Molina v. Astrue,

14   674 F.3d 1104, 1111 (9th Cir. 2012).  Where the acceptable medical source opinion is based on

15   an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it

16   rests on his own independent examination of the claimant." Tonapetyan v. Halter, 242 F.3d 1144,

17   1149 (9th Cir. 2001).  The opinions of non-examining professionals may also constitute

18   substantial evidence when the opinions are consistent with independent clinical findings or other

19   evidence in the record.  See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  Social

20   workers are not considered an acceptable medical source.  See Turner v. Comm'r of Soc. Sec.

21   Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010).  Nurse practitioners and physician assistants

22   also are not acceptable medical sources.  See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016).

23   Opinions from "other sources" such as nurse practitioners, physician assistants, and social

24   workers may be discounted provided the ALJ provides reasons germane to each source for doing

25   so.  See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874

26   F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance

27   when opinions from "other sources" may be considered acceptable medical opinions).

28   / / /

1        The weight given to medical opinions depends in part on whether they are

2   proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d

3   821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating

4   professional, who has a greater opportunity to know and observe the patient as an individual, than

5   the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th

6   Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the

7   opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th

8   Cir. 1990).

9        In addition to considering its source, to evaluate whether the Commissioner

10  properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in

11  the record; and (2) clinical findings support the opinions.  The Commissioner may reject an

12  uncontradicted opinion of a treating or examining medical professional only for "clear and

13  convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.

14  While a treating professional's opinion generally is accorded superior weight, if it is contradicted

15  by an examining professional's opinion which is supported by different independent clinical

16  findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035,

17  1041 (9th Cir. 1995).

18       A contradicted opinion of a treating or examining professional may be rejected

19  only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d

20  at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the

21  facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

22  finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

23  legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

24  professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

25  without other evidence, is insufficient to reject the opinion of a treating or examining

26  professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

27  conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

28  1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see

6

1     also Magallanes, 881 F.2d at 751.

2         At Step 4, the ALJ evaluated the medical opinion evidence of record.  See CAR

3     20-21.  The ALJ gave "considerable weight" to the opinions of the agency reviewing physicians,

4     who opined that plaintiff is capable of light work with some postural limitations.  See id. at 20.

5     The ALJ gave "little weight" to the February 2017 opinions of plaintiff's treating physician, Dr.

6     Phadke, and plaintiff's treating rheumatologist, Dr. Chalchian.  See id.  at 20-21.  Plaintiff argues

7     the opinions of her treating physicians, Drs. Phadke and Chalchian, were uncontradicted and the

8     ALJ failed to provide clear and convincing reasons for rejecting them.

9              1.     Dr. Phadke

10        In a letter dated February 10, 2017, Dr. Phadke, plaintiff's treating physician,

11    summarized plaintiff's conditions and rendered an opinion:

12        1.  The patient has a longstanding history of diffuse myofascial pain. She

13    notes stiffness x2 hours in all of her joints.  She carries a diagnosis of
      possible Schnitzler's syndrome and fibromyalgia with the latter being
      markedly symptomatic.  She follows with rheumatologist at Stanford

14    without improvement with potent immunosuppressive therapy and
      chronic pain medications.  She has been referred to the pain clinic at

15    Stanford for future evaluation as well as physical therapy for treatment,
      but prognosis is guarded.

16

17        2.  Chronic R knee pain d/t osteoarthritis of the knee, unresponsive to
      steroid and orthovisc injection and non-responsive [sic] to trochanteric
      injections.

18

19        3.  Memory impairment and brain fog - neuropsychiatric testing completed
      with results pending.

20

    4.  Lumbosacral radiculopathy pending physical therapy.

21

    5.  Osteoarthritis of the hands pending hand injection.

22
          The totality of these conditions produces marked physical
23    impairments, which prevent patient from doing numerous instrumental
      activities of daily living including gardening, cooking, and even writing.
24    Beyond markedly affecting her quality of life they leave her so functionally
      limited as to likely be permanently medically disabling.

25        CAR 753.

26    / / /

27    / / /

28    / / /

7

1          The ALJ gave little weight to Dr. Phadke's opinion.  See CAR 20.  Although

2    noting that a treating physician's opinion is typically granted more weight, the ALJ found that Dr.

3    Phadke's opinion was ". . .brief, vague, and grossly overstates the claimant's physical limitations

4    while providing inadequate justification for its conclusion."  Id. (exhibit sources omitted).

5    Additionally, the ALJ rejected Dr. Phadke's opinion that plaintiff's conditions are permanently

6    disabling because the Commissioner reserves judgment on that issue.  See id.

7          Plaintiff contends the ALJ failed to meet the standard of rejecting a treating

8    doctor's uncontradicted opinion only for "clear and convincing reasons."  See ECF No. 18 at 11

9    (citing Lester, 81 F.3d at 830-31).  Instead, plaintiff argues that the ALJ's reasoning for giving

10   Dr. Phadke's opinion little weight was itself brief and vague in response to the letter's detailed

11   account of plaintiff's medical history.  According to plaintiff:

12              Contrary to the ALJ's assertions, Dr. Phadke's opinion is
13          supported by and consistent with the objective medical evidence in the
            record as a whole.  Dr. Phadke's above opinion did not simply state Ford
14          was disabled without providing an explanation.  Dr. Phadke detailed the
            extensive treatments attempted for each of Ford's impairments and the
15          poor response Ford has had to them all. The ALJ rejected the opinion of
            Ford's treating doctor, instead assigning "considerable weight" to the
16          opinions of the non-examining state agency reviewing doctors who
            reviewed the record in 2015, well before the generation of the majority of
17          the objective medical evidence.  The ALJ's findings regarding Dr.
            Phadke's opinion are themselves brief and vague and the ALJ does not try
18          to explain which aspects of Dr. Phadke's opinion are inconsistent with
            which part of the objective medical evidence.  The ALJ herself found all
19          of the impairments Dr. Phadke described were medically determinable and
            severe.  It was error for the ALJ to then reject this treating doctor's
20          opinion as to how those impairments affect Ford's ability to perform work
            activity without providing the required clear and convincing reasons.
21

22          Id. at 12 (internal source citations omitted).

23

24          Plaintiff's argument is unpersuasive.  Dr. Phadke's February 2017 letter does not

25   express any opinions regarding plaintiff's functional capabilities, other than an opinion on the

26   ultimate issue of disability reserved to the Commissioner.  While the doctor outlines plaintiff's

27   reported complaints, medical history, and various diagnoses, Dr. Phadke notes only generally that

28   plaintiff has "marked physical impairments" which preclude "numerous instrumental activities of

1    daily living." CAR753.  Dr. Phadke does not identify any specific impairments, limitations, or

2    activities in rendering this conclusion.  The ALJ did not err in rejecting Dr. Phadke's conclusory

3    opinion.  See Meanel, 172 F.3d at 1113.

4                            2.      Dr. Chalchian

5            Dr. Chalchian, plaintiff's treating rheumatologist, also submitted an opinion letter

6    in February 2017.  As with Dr. Phadke, Dr. Chalchian lists plaintiff's reported symptoms and

7    treatment history.  See CAR 756.  According to Dr. Chalchian, plaintiff's impairments prevent

8    her from working.  See id.  The ALJ rejected Dr. Chalchian's opinion stating that, in addition to

9    many of the reasons given for rejecting Dr. Phadke's opinion, he "fails to identify a specific function-

10   by-function assessment of the claimant's capabilities."  CAR 20-21.

11           Repeating her previous argument, plaintiff contends the ALJ erred with respect to Dr.

12   Chalchian by not setting forth clear and convincing reasons for rejecting an uncontradicted treating

13   source.  The Court is similarly unpersuaded because, like Dr. Phadke's opinion, Dr. Chalchian's

14   opinion is entirely conclusory and touches on the ultimate issue of disability reserved to the

15   Commissioner.  Moreover, unlike Dr. Phadke's opinion, Dr. Chalchian's opinion also conflicts with

16   its own conclusion.  Half of the letter is dedicated to supporting plaintiff for permanent disability

17   based on her rheumatologic disease.  See CAR 756.  Dr. Chalchian notes, however, that treatment has

18   reasonably controlled plaintiff's symptoms.  See id.  This also conflicts with Dr. Phadke's opinion that

19   plaintiff's limitations are totally disabling.  While plaintiff contends that Dr. Chalchian's opinion is

20   fully supported by the medical evidence, see ECF No. 18 at 13, she fails to reference any supporting

21   documents from the record.

22   **B.      Plaintiff's Testimony**

23           The Commissioner determines whether a disability applicant is credible, and the

24   court defers to the Commissioner's discretion if the Commissioner used the proper process and

25   provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit

26   credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903

27   F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d

28   821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible

295503da1663cef8

1    and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative

2    evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not

3    credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d

4    1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007),

5    and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

6              If there is objective medical evidence of an underlying impairment, the

7    Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

8    because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

9    341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

10                    The claimant need not produce objective medical evidence of the
                 [symptom] itself, or the severity thereof.  Nor must the claimant produce
11                objective medical evidence of the causal relationship between the
                 medically determinable impairment and the symptom.  By requiring that
12                the medical impairment "could reasonably be expected to produce" pain or
                 another symptom, the Cotton test requires only that the causal relationship
13                be a reasonable inference, not a medically proven phenomenon.

14

15                80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in
                 Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

16

17             The Commissioner may, however, consider the nature of the symptoms alleged,

18    including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,

19    947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the

20    claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

21    testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

22    prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

23    physician and third-party testimony about the nature, severity, and effect of symptoms.  See

24    Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

25    claimant cooperated during physical examinations or provided conflicting statements concerning

26    drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

27    claimant testifies as to symptoms greater than would normally be produced by a given

28    impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

1    Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

2            At Step 4, the ALJ evaluated the credibility of plaintiff's statements and testimony.

3    See CAR 16-20.  Plaintiff alleged disabling symptoms during the relevant time period as a result

4    of her impairments.  See id. at 16.  The ALJ determined: "In terms of the claimant's alleged

5    difficulties, despite her allegations of pain and limited functioning, the objective medical findings

6    in the record revealed largely unremarkable findings or symptoms otherwise controlled with

7    conservative treatment modalities, as discussed below."  Id. at 17.  The ALJ then discussed the

8    objective medical evidence.  See id. at 17-20.

9            Plaintiff argues the ALJ's conclusion is undermined by plaintiff's history of

10   treatment for pain which has not, according to her treating sources, been effective.  According to

11   plaintiff:

12           Contrary to the ALJ's assertions, as discussed above regarding the
             opinions of Ford's treating doctors, the record shows multiple different
13           medications, injections, physical therapy, and potent immunosuppressive
             injections have failed to alleviate Ford's symptoms from fibromyalgia and
14           degenerative disc and joint disease. (Tr. 753, 756.)

15           ECF No. 18, pg. 15.

16   This argument is unpersuasive.  To the extent plaintiff's pain management treatment was

17   ineffective, one would expect plaintiff to have sought more aggressive treatment in the fact of

18   totally disabling pain.  Plaintiff, however, has pointed to no evidence suggesting she did.  See

19   Smolen, 80 F.3d at 1284 (concluding that the unexplained failure to seek treatment constitutes a

20   valid reason to discount a claimant's credibility).

21           Plaintiff also contends that the ALJ's reference "generally" to inconsistency with

22   the objective medical evidence is insufficient because the ALJ "identified no particular findings

23   which contradicted any of the specific functional deficits Ford described."  ECF No. 18, pg. 15.

24   This contention is belied by the hearing decision in which the ALJ meticulously discussed each

25   severe impairment, the symptoms alleged to be associated with that particular impairment, and

26   the objective findings related to the impairment.  See CAR 17-20.

27   / / /

28   / / /

11

1    Finally, plaintiff addresses her complaints of pain associated with fibromyalgia.

2 Citing Benecke v. Barnhart, 379 F.3d 587 (9th Cir. 2004), plaintiff contends that the ALJ erred by

3 relying on inconsistency with the objective evidence to discount her complaints of pain.

4 Plaintiff's reliance on Benecke is misplaced.  In that case, the Ninth Circuit criticized the ALJ's

5 reliance on a claimant's limited daily activities to discount allegations of disabling fibromyalgia

6 pain.  See id.  In this case, the ALJ did not rely on plaintiff's daily activities.  As plaintiff

7 acknowledged, the ALJ cites inconsistency with the objective evidence as well as plaintiff's lack

8 of aggressive treatment for pain, both of which are specific and legitimate reasons supported by

9 substantial evidence.

10    **C.      Hypothetical Questions**

11    Hypothetical questions posed to a vocational expert must set out all the substantial,

12 supported limitations and restrictions of the particular claimant.  See Magallanes v. Bowen, 881

13 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's limitations, the

14 expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary

15 value.  See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While the ALJ may pose to

16 the expert a range of hypothetical questions based on alternate interpretations of the evidence, the

17 hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by

18 substantial evidence in the record as a whole.  See Embrey v. Bowen, 849 F.2d 418, 422-23 (9th

19 Cir. 1988). By responding to hypothetical questions, the vocational expert testifies as to: (1) what

20 jobs the claimant would be able to perform; and (2) the availability of such jobs in the national

21 economy. See Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999).

22    Plaintiff argues that the ALJ erred in posing a hypothetical question to the

23 vocational expert without the appropriate limitations.  See ECF No. 18 at 17.  Plaintiff contends

24 the vocational expert's hypothetical assumptions were incomplete because the ALJ improperly

25 rejected her statements and testimony and the opinions of her treating doctors.  This argument,

26 which is dependent on plaintiff's prior arguments, is likewise unpersuasive.  As previously

27 discussed, the ALJ did not err in rejecting the opinions of the treating doctors or plaintiff's

28 subjective statements.

## IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

      1.    Plaintiff's motion for summary judgment, ECF No. 18, is denied;

      2.    Defendant's motion for summary judgment, ECF No. 21, is granted;

      3.    The Commissioner's final decision is affirmed; and

      4.    The Clerk of the Court is directed to enter judgment and close this file.

Dated:  September 25, 2020

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

13